IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| LARY LEHMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-4020-CV-C-NKL |
| ) | |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

ORDER

Pending before the Court is Defendant United Parcel Service's ("UPS") Motion to Dismiss [Doc. # 7]. For the reasons set forth below, the Motion will be granted in part and denied part.

I.  **Background**

Plaintiff Lary Lehman ("Lehman") alleges the following facts in his complaint which the Court assumes to be true for the purposes of UPS's Motion to Dismiss. Lehman began working for UPS in October 1992. On March 12, 2004, he was injured, through no fault of his own, while driving a UPS truck. Following his injury, Lehman was examined by a Workers Compensation Physician who placed Lehman on permanent restrictions as of July 9, 2004. When Lehman reported his restrictions to UPS, his employment was terminated.

1

Lehman filed a charge of discrimination[1] with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") on November 3, 2005. On January 4, 2006, the EEOC sent Lehman a "Dismissal and Notice of Rights" stating that his case was being closed because his charge of discrimination was filed more than 300 days after the alleged discrimination and was therefore untimely. Nonetheless, the EEOC did issue a right to sue letter. The MCHR sent Lehman a letter on January 25, 2006, stating that the MCHR had made a finding of Administrative Closure because his charge was filed more than 180 days after the alleged discrimination and was deemed untimely. The MCHR letter also explained that any appeal from the Commission's untimeliness decision had to be filed in Cole County Circuit Court. Lehman did not appeal the decision to state court but instead filed the present suit in U.S. District Court under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the Missouri Human Rights Act ("MHRA"), and the anti-retaliation provisions of the Missouri Workers Compensation Act.

## II.  Discussion

### A.  The ADA and the MHRA Claims

UPS moves to dismiss Counts I and III of Lehman's Complaint, claiming that Lehman failed to file a timely charge of discrimination with either the EEOC or the Missouri Commission on Human Rights (MCHR). Counts I and III allege violations of

---

[1] An EEOC charge is part of the public record, and thus a motion to dismiss is not converted to one for summary judgment by the attachment of a copy of the EEOC charge. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002).

the ADA and the MHRA. As a condition precedent to maintaining an action under either the ADA or the MHRA, a plaintiff must first exhaust administrative remedies by filing a timely charge of discrimination with the EEOC or the MCHR, respectively. *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005)(citing 42 U.S.C. 2000e-5(e)); *State ex rel. Martin-Erb v. Missouri Commission on Human Rights*, 77 S.W.3d 600, 603 (Mo. banc 2002); *Stuart v. General Motors Corp.*, 217 F.3d 621, 626 (8th Cir. 2000). To be timely, a charge under the ADA must be filed within 300 days of the alleged act of discrimination, *Henderson*, 1026 F.3d at 1032, and a charge under the MHRA must be filed within 180 days of the alleged discriminatory act. *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 228 (8th Cir. 1996)(citing Mo. Rev. Stat. § 213.075(1)). Lehman filed his charge of discrimination with the EEOC and the MCHR on November 3, 2005, for discriminatory conduct occurring most recently on July 15, 2004. Because more than a year had passed between the discrimination and when Lehman filed his charges, both the EEOC and the MCHR dismissed Lehman's charge as untimely.

That determination does not necessarily end the inquiry, however, as courts make an independent review of the timeliness of an administrative charge. *See, e.g., Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir. 1996) *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1017 (1st Cir. 1979); *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 986 (D.C. Cir. 1973). Moreover, the administrative deadline is not a jurisdictional limitation, but operates in the nature of a statute of limitations and is subject to equitable tolling and

estoppel. *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982); *Anderson v. Unisys Corp.*, 47 F.3d 302, 305-306 (8th Cir. 1995).

### 1. The *American Pipe* Tolling Doctrine and the ADA

Lehman does not dispute that he filed his EEOC charges more than 300 days after UPS's discriminatory conduct. Instead, he argues that the deadline was tolled by the filing of a putative class action suit against UPS in the U.S. District Court for the Western District of Pennsylvania on March 9, 2004. *See Hohider v. United Parcel Serves, Inc.*, Case No. 04-0363 (W.D.Pa). The Supreme Court has recognized that a pending putative class action may toll statute of limitations deadlines for individual class members. *See American Pipe & Constr. Co. V. Utah*, 414 U.S. 538 (1974) and *Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345 (1983). In *American Pipe*, the state of Utah filed a putative class action antitrust lawsuit on behalf of several public entities eleven days before the expiration of the applicable statute of limitations. Eventually, the District Court denied class certification for want of Rule 23 numerosity, at which point several of the putative class members moved to intervene. The District Court allowed intervention despite the expired statute of limitations. The Supreme Court affirmed, holding that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *American Pipe*, 414 U.S. at 553. The Supreme Court reasoned that tolling is necessary during the pendency of a putative class action to prevent every putative class member from having to file individual claims before the

4

statute of limitations runs, thereby defeating the purpose of the class action mechanism. *Id.*

Later that same year, the Court extended the *American Pipe* tolling principle to all putative class members who file independent cases after class certification is denied. *Crown*, 462 U.S. at 350. In that case, a Title VII plaintiff named Parker received an EEOC Right to Sue letter shortly after other plaintiffs had filed a putative class action against his employer, *Crown, Cork, & Seal Co.* Because Parker was a putative member of the class, he waited over two years before filing his own case to see if the class action would be certified. When it wasn't, Parker filed his own claim within 90 days. The Supreme Court concluded that tolling was appropriate in Parker's case under the same reasoning as *American Pipe*.

UPS argues that Lehman is not entitled to *American Pipe* tolling because he did not wait until the *Hohider* court ruled on class certification before filing his own case. In similar circumstances, the Sixth Circuit has noted that "[t]he purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but [they] are [furthered] when plaintiffs delay until the certification issue has been decided." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005). The Sixth Circuit adopted the reasoning of several District Courts who have held that "a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine." *Id.* at 568; *see Calvello v. Electronic Data Systems*, 2004 WL

5

941809 at *4 (W.D.N.Y. 2004) ("By filing her present action while the issue of class certification was [still pending in the class action], plaintiff in effect waived the toll that the pending class certification created under *American Pipe*."); *Rahr v. Grant Thornton, LLP*, 142 F. Supp.2d 793, 800 (N.D. Tex. 2000)("by filing an individual suit before class certification was determined, [plaintiff] frustrated the purpose of the class action tolling doctrine and should not now be able to reap its benefits"); *see also Chinn v. Giant Food, Inc.*, 100 F. Supp.2d 331 (D. Md. 2000); *Stutz v. Minnesota Mining Manufacturing Company*, 947 F.Supp. 399 (S.D. Ind. 1996); *Chemco, Inc. v. Stone, McGuire, & Benjamin*, 1992 WL 188417 (N.D. Ill. 1992); *but see Rochford v. Joyce*, 755 F. Supp. 1423, 1428 (D. Ill. 1990) ("Defendants are correct that the application of the *American Pipe* tolling rule to actions filed prior to the denial of class certification could create a multiplicity of suits which American Pipe sought to avoid. However, we believe the Court's directive is clear: the limitations period remains tolled until class certification is denied.")

The Eighth Circuit has not yet ruled on whether the tolling principle in *American Pipe* applies to plaintiffs who file independent cases before class certification is decided. However, UPS cites *Anderson v. Unisys Corp*, 47 F.3d 302, 308 (8th Cir. 1995), for the proposition that "[t]he *American Pipe* rule does not operate to revive stale claims, but rather tolls the limitations period on viable claims while the trial court determines the parameters of the class in any possible class action."

In *Anderson*, seven employees were laid off by the same employer. Six filed charges of discrimination and received Right to Sue letters but only Anderson filed a complaint in federal court. After the statute of limitations had run for the other employees, Anderson amended his complaint to name his former co-workers as members of a putative class. The district court eventually dismissed five of the plaintiffs for failure to file suit within 90 days of receiving their Right to Sue letters. On appeal, the dismissed plaintiffs argued that the 90 day statute of limitations should be tolled under the logic of *American Pipe* because they were members of Anderson's putative class action. The Eighth Circuit rejected their argument because Anderson did not amend his complaint to assert a class action until after the statute of limitations had run for the other plaintiffs. *Id.* at 308. As the claims were already stale at that point, they could not be revived under *American Pipe* simply because Anderson named them as putative class members.

*Anderson* does not control the present case. The *Hohider* class action was filed in March 2004, before the discrimination against Lehman even occurred and, thus, long before the statute of limitations ran.

After a thorough review of the authority cited by UPS, the Court is not persuaded that Lehman cannot take advantage of *American Pipe* tolling simply because he filed his own lawsuit before class certification was decided in the *Hohider* case. It is clear that if Lehman had filed his charge of discrimination within 300 days, his case could proceed, even though a class action had been previously filed. It is also clear that if class certification is denied in *Hohider*, Lehman could file suit and proceed under *American*

7

*Pipe*. It is even clear that if class certification is granted in *Hohider*, Lehman could "opt out" under Rule 23(c)(2(B) and file his own separate case. Therefore, the only issue is whether *American Pipe* contemplates some period of months or years, between the running of the statute of limitations for individual claims and the certification ruling in *Hohider,* during which Lehman should be barred from suing UPS. Put more simply, is there a temporal gap in the *American Pipe* tolling doctrine? The Court can see no logical or jurisprudential basis for reaching such a conclusion, given the current law.

Refining the justification for *American Pipe* tolling, the Supreme Court has explained that

> a tolling rule for class actions is not inconsistent with the purposes served by statutes of limitations. Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, but these ends are met when a class action is commenced. Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims. And a class complaint notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.

*Crown v. Parker*, 462 U.S. 345, 353 (U.S. 1983) (internal quotations and citations omitted). The crux of the Court's reasoning is that a statute of limitations' purpose is achieved when a class action is filed irrespective of when an individual plaintiff later files her own suit. The class action puts the defendant on notice that many plaintiffs may have claims against it and that it needs to preserve evidence to defend against those claims.

8

There is "no potential for unfair surprise" when individual cases are later filed after certification is denied, or after it is granted and individual claimants opt out. Similarly, under this reasoning there can be no surprise if an individual plaintiff files her own claim before certification is decided. The defendant would still be on notice and would still have had every incentive to preserve evidence. The defendant might now be required to defend itself in multiple cases in different fora but there is no guarantee against such contingencies even if the individual plaintiffs waited until after certification were decided.

As noted above, the Sixth Circuit and several district courts have reached a different conclusion, but it is difficult to square their reasoning with the Supreme Court's language. In *Crown,* the Supreme Court held quite simply that

> the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.

*Id.* at 353-354. There is nothing in that language that suggests the statute of limitations is only tolled for those plaintiffs who wait to file suit until there is a ruling on class certification.

While it might be a good idea to have a rule that prohibits individual cases until after class certification is resolved, no such rule exists today. The current Federal Rules of Civil Procedure permit a multiplicity of suits in different jurisdictions after a class is certified because members of the class are permitted to "opt out." *See* Rule 23(c). Nor is there anything in the Federal Rules of Civil Procedure that prohibits individual lawsuits

9

being filed in multiple jurisdictions prior to a ruling on a pending motion for class certification. Rule 23 is an efficient way to handle multiple parties, but it is clearly designed to accommodate individual choice as well. While it might be argued that individual choice is not a good idea in this context, such an argument would justify a new rule. It would not justify ignoring the structure of the current rule, and a clear directive from the United States Supreme Court. Finally, it would be ironic to say that Lehman has filed his case too soon and, therefore, it must be dismissed because the statute of limitation is violated. It would turn the purpose of the statue of limitations on its head to say that Lehman must wait until the dispute is more stale before he can file his individual case.

If Lehman waits to file his suit until the *Hohider* court rules on class certification, the statute of limitations will be tolled as of the date the class action is filed. This Court finds no basis in either Supreme Court or Eighth Circuit precedent for ruling that the statute of limitations should not be tolled because Lehman chose to sue sooner than he had to. His ADA claim cannot be dismissed on statute of limitations grounds.

### 2. Failing to Obtain a Right to Sue Letter and the MHRA

Obtaining a Right to Sue letter is a condition precedent to filing suit under the MHRA. *Whitmore v. O'Connor Mgmt.*, 156 F.3d 796, 800 (8th Cir. 1998); *Public Sch. Ret. Sys. v. Mo. Comm'n on Human Rights*, 188 S.W.3d 35, 44 (Mo. Ct. App. 2006) ("Although not jurisdictional, a right-to-sue letter is a prerequisite to the filing of a MHRA claim in . . . court.") Lehman never obtained a Right to Sue letter because the

Missouri Commission of Human Rights (MCHR) administratively closed his MHRA claim as untimely. When it notified Lehman of its decision, the MCHR advised him that if he intended to challenge the Commission's untimeliness determination, he had to do so by filing an appeal in Cole County Circuit Court under Mo. Rev. Stat. § 536.150. Lehman did not appeal the MCHR's decision to state court as required by the MHRA.

As noted above, the period in which Lehman had to file his charge of discrimination with the MCHR should have been tolled under the *American Pipe* tolling doctrine. Lehman could have appealed the MCHR decision to administratively close his case as untimely on those grounds. However, the MHRA grants exclusive jurisdiction to hear appeals of MHRC decisions to the Cole County Circuit Court. Because Lehman chose to come to federal court instead, he has never received a Right to Sue letter from the MCHR, as he has from the EEOC. Thus, Lehman has not satisfied all of the conditions precedent to filing suit under the MHRA, and this Court must dismiss, without prejudice, Count III of his Complaint.

### B. The Rehabilitation Act of 1973

Count II of Lehman's Complaint alleges that UPS violated the Rehabilitation Act of 1973. Although his Complaint does not specify what provision of that Act gives rise to his claim, the fact that UPS is not a government entity limits the range of possibilities. Section 504, 29 U.S.C. § 794, prohibits discrimination by recipients of federal funds. UPS does not receive federal funds, so that section is inapplicable. Section 503, U.S.C. § 793, requires government agencies to include nondiscrimination provisions in all

11

government contracts in excess of $10,000. This provision might apply to a contract between UPS and the federal government, but violations of Section 503 are remedied though administrative enforcement actions, not private lawsuits. *Id.* § 793(b). Indeed, the Eighth Circuit has held that Section 503 of the Rehabilitation Act does not create a private right of action. *See Simon v. St. Louis County*, 656 F.2d 316, 319 (8th Cir. 1981). The other Circuit Courts have reached the same conclusion.[2] As Lehman cannot prevail under either section of the Rehabilitation Act, Count II must be dismissed.

### C. Workers Compensation Retaliation

Count IV of Lehman's Complaint raises a state law claim for retaliatory discharge in violation of the Missouri Workers Compensation Act, Mo. Rev. Stat. § 287.780. Defendant UPS argues that Lehman lacks standing to bring the claim because he filed for bankruptcy in October 2005. Under the Bankruptcy Code,

> all of the debtors' legal and equitable interests are transferred to the bankruptcy estate at the time the bankruptcy petition is filed. The property of a bankruptcy estate is 'broadly defined,' and encompasses conditional, future, speculative, and equitable interests of the debtor. Most importantly, the property of the bankruptcy estate includes all causes of action that the debtor could have brought at the time of the bankruptcy petition.

---

[2]*See Davis v. United Air Lines, Inc*., 662 F.2d 120, 121 (2d Cir. 1981); *Beam v. Sun Shipbuilding & Dry Dock Co.*, 679 F.2d 1077, 1078 (3d Cir. 1982); *Painter v. Horne Bros., Inc*., 710 F.2d 143, 144 (4th Cir. 1983); *Rogers v. Frito-Lay, Inc*., 611 F.2d 1074, 1085 (5th Cir.), *cert. denied*, 449 U.S. 889 (1980); *Hoopes v. Equifax, Inc.*, 611 F.2d 134, 135 (6th Cir. 1979); *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226, 1244 (7th Cir. 1980); *Fisher v. City of Tucson*, 663 F.2d 861, 867 (9th Cir. 1981), *cert. denied*, 459 U.S. 881 (1982); *Howard v. Uniroyal, Inc*., 719 F.2d 1552 (11th Cir. 1983); *Hodges v. Atchison, Topeka and Santa Fe Ry. Co.*, 728 F.2d 414, 416 (10th Cir.), cert. denied, 469 U.S. 822 (1984)

*United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 913 (8th Cir. 2001)(internal citations omitted). When a bankruptcy estate is established and trustee is appointed, "the trustee's right to sue on behalf of the estate is an exclusive right." *In re Brooks*, 227 B.R. 891, 894 (Bankr. D. Mo. 1998). "[T]he debtor no longer has standing to pursue a cause of action which existed at the time the order for relief was entered. In other words, until an asset of the bankruptcy estate is exempted out of the estate, the trustee, not the debtor, owns the entire asset." *Id.*

Notwithstanding this general principle, persons filing for bankruptcy in Missouri "shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri . . . ." Mo. Rev. Stat. § 513.427. This exemption extends to unliquidated causes of action which are not assignable under Missouri law. *Scarlett v. Barnes*, 121 B.R. 578, 580-581 (W.D. Mo. 1990). A tort claim "in which the wrong is regarded as one to the person rather than an injury affecting the estate or property" is not assignable. *In re Barnes*, 177 B.R. 635, 637 (Bankr. W.D. Mo. 1995) (citing *State ex rel. Park Natl. Bank v. Globe Indemnity Co.*, 332 Mo. 1089, 61 S.W.2d 733, 736 (1933)). "Injury to the person includes wrongs done to the physical person, to their reputation or feelings . . . ." *Id.* "Because injuries affecting personal rather than property interests are not assignable under Missouri law, these types of actions are also exempt under RSMo § 513.427." *Id.*

Under this reasoning, legal malpractice claims have been held to be unassignable under Missouri law and, therefore, exempt from the bankruptcy estate under Mo. Rev.

13

Stat. § 513.427. *See Scarlett*, 121 B.R. at 580-581. Unliquidated personal injury claims are also exempt. *In re Mitchell*, 73 Bankr. 93, 95 (Bankr.E.D.Mo. 1987). By contrast, unliquidated claims for breach of contract, fraudulent misrepresentation and breach of fiduciary duty are not exempt. *In re Jones*, 102 Bankr. 730 (Bankr. W.D. Mo 1989).

The present claim for workers' compensation retaliation is most similar to *In re Barnes*, 177 B.R. 635 (Bankr. D. Mo. 1995). In that case, the Bankruptcy Court held that the debtor's unliquidated discrimination claims pending before the MCHR contained elements of both personal and property damage. That court held that

> should the Debtor[] recover an award for [his] discrimination claim, any recovery that he realizes for emotional distress or similar harms to the person is exempt from the bankruptcy estate. Any recovery that he realizes for loss of wages and punitive damages constitutes property interest and will be included in the bankruptcy estate for distribution to creditors.

*Id.* at 638.

More recently, however, the Bankruptcy Court for the Western District of Missouri has noted that the "splitting of the element of damages that must be proved in order to maintain a cause of action for personal injury, with a portion of the damages claimed as exempt and a portion not," is "expressly prohibited by Missouri case law" In re Williams, 293 B.R. 769, 775 (Bankr. D. Mo. 2003) (citing *Chuning v. Calvert*, 452 S.W.2d 580, 583 (Mo. Ct. App. 1970) and *Travelers Indemnity Co. V. Chumbley*, 394 S.W.2d 418, 422 (Mo. Ct. App. 1965)). Accordingly, that court held that "either pending or potential causes of action arising out of a personal injury tort are exempt in their entirety." *In re Williams*, 293 B.R. 769, 777 (Bankr. D. Mo. 2003).

14

Based on the foregoing cases, this Court concludes that Lehman's claim for Workers Compensation Retaliation is, at least in part, a personal tort and therefore unassignable. The Court therefore concludes that it is exempt in its entirety from the Bankruptcy estate and my be pursued in the present action.[3] The Motion to Dismiss will be denied as to Count IV.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss [Doc. # 7] is GRANTED in part and DENIED in part. The Motion is GRANTED as to Counts II and III and DENIED as to Counts I and IV.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 8, 2006
Jefferson City, Missouri

---

[3] UPS also argues that Lehman did not list his Workers Compensation Retaliation Claim among the assets for which he sought exemption when he filed his bankruptcy case. UPS offers the schedule of exemptions Lehman filed as an exhibit to its motion. UPS argues that Schedule C does not include an exemption for his Workers Compensation Retaliation Claim; however, Item 20 of Schedule C, Personal Property, lists Lehman's potential claims for Workers Compensation and Discrimination under the ADA. At this stage of the proceeding, the Court cannot say that as a matter of law this shows that Lehman has forfeited his right to pursue his Retaliation Claim in his own name.